### PELEG SLADE *vs.* LLOYD SLADE, Executor.
### STEPHEN SLADE & wife *vs.* SAME & Trustee.
### JAMES MASON & wife *vs.* SAME.

A widow of a revolutionary officer died September 18th, 1838, entitled to a pension under the act of Congress of July 4th, 1836, having appointed the defendant her executor and residuary legatee. He collected the pension-money from the 4th March, 1831, to September 18th, 1838, and it was held that he was not liable to pay any portion thereof to the children of the widow.

*Foot* v. *Knowles,* 4 Met. 386, affirmed.

Slade *v.* Slade, Executor.

EACH of the above-named actions was brought tc recover one sixth part of certain money received by the defendant, the amount of a pension allowed by the United States government to Mary Slade, widow of Peleg Slade, under the act of July 4th, 1836. Said Peleg died December 8th, 1813, being in the receipt of an annual pension of $200, for military service, and leaving the defendant his executor and residuary legatee. Mary Slade, his widow, died September 18th, 1838, having also appointed the defendant her executor and residuary legatee, and he gave the usual bond to pay debts and legacies. On the 4th day of February, 1851, the following pension certificate was issued from the secretary of the interior: "I certify that in conformity with the law of the United States, Mary Slade, deceased, who was the widow of Peleg Slade, was entitled to a pension under act 4th July, 1836, (3d section,) and having died on the 18th September, 1838, her children, Lloyd Slade, Peleg Slade, Nancy Slade, Obadiah Slade, Elizabeth Slade, and Hannah Mason, are entitled to the amount at the rate of three hundred dollars per annum, from 4th March, 1831, to 18th September, 1838, when she died, payable to Lloyd Slade, executor of the estate of Mary Slade, deceased, after deducting former payments at the rate of two hundred dollars per annum."

On the same day, the commissioner of pensions addressed the following letter to F. Haven, Esq. pension agent at Boston: " Sir,—Be pleased to inscribe on your roll, act 4th July, 1836, the name of Mary Slade, deceased, widow of Peleg Slade, who was a colonel in the revolution, at the rate of three hundred dollars per annum, commencing 4th March, 1831, and terminating 18th September, 1838, when she died, and payable to Lloyd Slade, executor, for the benefit of himself, Peleg Slade, Nancy Slade, Obadiah Slade, Elizabeth Slade, and Hannah Mason, only surviving children, after deducting former payments, at the rate of two hundred dollars per annum."

On the 15th February, 1851, the defendant received of said Haven the sum of $753.88, for which he gave the following ceipt: " Received of Franklin Haven, agent for paying

pensioners belonging to the state of Massachusetts, seven hundred and fifty-three dollars 88-100, being for ninety months 14 days pension due to Mary Slade, deceased, from the 4th day of March, 1831, to the 18th day of September, 1838, for which I have signed duplicate receipts, deducting amount heretofore paid." And the several plaintiffs, as children of said Peleg and Mary, sued for a portion of said money as belonging to them. In the court of common pleas, *Byington*, J. ruled that the money belonged to the estate of Mary Slade, and was either held by the defendant as her executor, or became his in his own right, as residuary legatee, and that the actions could not be maintained; to which rulings the plaintiffs alleged exceptions.

*H. Battelle*, for the plaintiffs. 1. The defendant, by receiving the money upon and by virtue of the pension certificate, with full knowledge of its contents, bound himself to pay over their shares to the several children named therein, as entitled to it.

2. The increase of the pension in this case vested in the children named in the pension certificate, immediately upon the issuing thereof.

3. But if it did not vest immediately in the children, the *arrears* of the pension of Mary Slade vested in her children at the time of her death, and are not assets to be administered by her executor. 4 U. S. Stats. at Large, 350, Act of March 2, 1829, c. 28, § 2; Id. 530, Act of June 7th, 1832, c. 126, §§ 3, 4: 5 Id. 128. Act of July 4th, 1836. *Commonwealth* v. *Cambridge*, 20 Pick. 267; *United States* v. *Freeman*, 3 How. 556; 5 U. S. Stats. at Large, 385, Act of June 19th, 1840, c. 39; *Heirs of Emerson* v. *Hall*, 13 Pet. 409.

4. But if not entitled to the arrears of the pension, which had become due and payable at the time of the death of said Mary, the children are entitled to the fraction of the half yearly sum which accrued between the 4th and the 18th of September, 1838, when she died. Pension Laws, Edition of 1849, pp. 50, 58, 130, 133. *McKeen* v. *Delancy's Lessee*, 5 Cranch, 22; *Foot* v. *Knowles*, 4 Met. 386.

*N. Morton & B. Sanford*, for the defendant

THOMAS, J. The ruling of the presiding judge is sustained by the decision of this court in *Foot* v. *Knowles*, 4 Met. 386. Upon an examination of that case, and the authorities upon, which it rests, we are satisfied it was rightly decided.

It is suggested by the learned counsel for the plaintiffs, that the *St.* of March 2d, 1829, was not in the mind of the court when *Foot* v. *Knowles* was determined. But in looking at that statute, it seems to us to be limited to the pension laws in force at the time of its passage. Before the act of June 19th, 1840, the right to this money had become fixed. The act is also in terms prospective only.

*Exceptions overruled.*